LEBBEUS G. ETCHISON and others, *vs.* MARTHA W. ETCHISON.

*Motion to Dismiss an Appeal—Execution and Attestation of a Will.*

A motion made in this case by the appellee to dismiss the appeal for the reason that the bill of exceptions was signed long after the lapse of the term, and there being as alleged, no order of Court for extending the time and no consent of counsel to such extension, was overruled on affidavits of counsel filed, showing the circum- stances which caused the delay in signing the bill of exceptions and the action of the Court below in the matter.

A will was written by C. at the request and at the dictation of the testator who sent for two other persons to attest it. On the morning of its execution C. read the will over to the testator, who said, it was exactly as. he wanted. C. then left the will with the testator, went into an adjoining room and called in the two other witnesses. The testator was raised up in bed for the purpose of signing the will, two of the witnesses stood in front of him, and saw him make his mark, the other witness was behind him, assisting to hold him up, and in a position where he could have seen him sign it, but did not. The will was attested by the three witnesses in the testator's presence. C., in his presence, asked the other wit- nesses to sign the will, the testator did not speak while they were in the room. The witnesses testified, that the testator was at the time of sound mind and memory, and capable of executing a valid deed or contract. On issues upon a caveat to the will, it was HELD:

That the will was valid.

APPEAL from the Circuit Court for Montgomery County.

The case is stated in the opinion of the Court. The declaration of the testator mentioned in the opinion as contained in the will, is as follows: "In testimony whereof I hereunto set my hand and seal, and publish and declare this to be my last will and testament in the presence of

the witnesses named below" * * * Then follows the usual attestation clause signed by the three witnesses.

*Exception.*—At the trial the caveator offered sixteen prayers, of which it is necessary to set out only the following:

1. That if the jury shall find from the evidence in this cause, that Lloyd Etchison was not, at the time of executing the paper-writing, purporting to be his last will, and offered in evidence in this cause, of sound and disposing mind, and not capable of making a valid deed or contract, that then he was not in the possession of that description of mental capacity which is required by the testamentary laws of this State, as contained in Article 93, section 300, of the Code of Public General Laws, and that the meaning of the words, "sound and disposing mind, and capable of making a valid deed or contract," in respect to the disposition of his property by last will and testament, is, that he must have had sufficient capacity at the time of executing the will, to make a disposition of his estate with judgment and understanding in reference to the amount and situation of his property, and the relative claims of the different persons who should have been the objects of his bounty; but the meaning of the words judgment and understanding, is not that the jury should reject the will because they may believe that it was in its provisions unjust or injudicious, although the provisions of the will may be considered by the jury in deciding the question as to the capacity or incapacity of the testator.

2. That if the jury should find from the evidence, that Lloyd Etchison did not possess sufficient mental capacity, at the time of making the alleged will offered in evidence, "to make a disposition of his estate with judgment and understanding, in reference to the amount and situation of his property and the relative claims of the different persons who should have been the objects of his bounty," that then he was not of sound and disposing mind, and

not capable of making a valid deed or contract, and that it is not necessary for the jury to find that the testator was insane, in the popular sense of that word, before they can adjudge him incapable of making a valid deed or contract.

3. That he who is not capable to execute a valid deed or contract, is, under the testamentary system of this State, incompetent to make a valid will or testament. It is not sufficient of itself that a testator should be able to describe his feelings or give correct answers to ordinary questions; his feelings at the moment may dictate his description of them, and the questions may prompt the answers, and yet he may be inadequate to the transaction of other business, and unable to dispose of his estate with understanding and discretion.

4. That before the jury can find that the paper-writing offered in evidence and purporting to be the last will and testament of Lloyd Etchison, was his will, and before they can find that the same was executed by him according to law, they must find from the evidence that the said paper-writing was signed by the said Lloyd Etchison, by making his mark to the same in the presence of at least three credible witnesses, who, at his request, in his presence, attached their names as witnesses thereto, and that the said Lloyd Etchison, at the time of making his mark to said paper-writing, knew the contents thereof, and designed and intended the same to be his last will and testament; although the jury can lawfully infer that said Lloyd Etchison knew the contents of said paper-writing from the fact of making his mark thereto, (if the jury shall find that he did make his mark thereto,) unless the jury shall further find from the evidence he did not in fact know the contents of said paper-writing.

5. That the verdict of the jury must be for the caveator on the first and eighth issues, unless the jury shall find from the evidence that at the time the said Lloyd Etchison

made his mark to the paper-writing offered in evidence, and purporting to be the last will and testament of Lloyd Etchison, he, the said Lloyd Etchison, declared the same to be his last will and testament, and requested one of the three subscribing witnesses to make his mark to the same, and requested the three subscribing witnesses to sign the same as witnesses, or said or did something from which the said three subscribing witnesses could infer or imply a declaration by said Lloyd Etchison, that said paper-writing was his last will and testament, and said or did something from which said witnesses could infer or imply a request from said Lloyd Etchison, that one of the said witnesses should make his mark to the said paper-writing, and said or did something from which said witnesses could infer or imply a request on the part of the said Lloyd Etchison, that the subscribing witnesses should attest said will as witnesses thereto.

6. That there is no legally sufficient evidence from which the jury can find that the paper-writing, offered in evidence as the last will and testament of Lloyd Etchison, was lawfully executed to devise lands and tenements or real estate, and that the verdict of the jury must be for the caveator on the first and eighth issues, as to the lands and tenements or real estate of said Lloyd Etchison.

8. That if the jury shall find from the evidence that Lloyd Etchison could write his name, but did not sign his name to the paper-writing offered in evidence as the last will and testament of the said Lloyd Etchison, then the verdict of the jury must be for the caveator on the first and eighth issues, unless the jury shall further find, that at the time of the execution of said paper-writing, said Lloyd Etchison authorized or requested one of said subscribing witnesses to make his mark to said paper-writing, or made this mark with the aid or assistance of one of said witnesses.

9. That the verdict of the jury must be for the caveator on the first and eighth issues, unless the jury shall find from

the evidence that at the time of the execution of the paper-writing, offered in evidence as the last will and testament of Lloyd Etchison, the said Lloyd Etchison authorized or requested the subscribing witnesses, or some or one of them, to make his mark to said paper-writing, or assented to its being done.

11. That before the jury can find a verdict for the caveatee, the jury must find from the evidence that Lloyd Etchison made his mark to the paper-writing offered in evidence as the last will and testament of said Lloyd Etchison, in the presence of at least three credible witnesses, who, by his request, or by his assent, express or implied, signed said paper-writing as attesting witnesses, thereto.

12. That unless the jury shall find from the evidence that Lloyd Etchison made his mark to the paper-writing, offered in evidence as the last will and testament of said Lloyd Etchison, in the presence of at least three credible witnesses, who, by his request, expressed or implied, or by his assent, signed said paper-writing as attesting witnesses thereto, the verdict of the jury must be for the caveator on the first and eighth issues, as to the lands and tenements of said Lloyd Etchison.

14. That if the jury shall find from the evidence that at the time of the execution of the paper-writing, offered in evidence as the last will and testament of Lloyd Etchison, the said Lloyd Etchison was not of sound mind and disposing memory and understanding, capable of making a valid deed or contract, then the verdict of the jury must be for the caveator on the ninth issue, although the jury shall further find that said mental unsoundness was brought on by bodily ill health or disease.

15. That if the jury shall find from the evidence that at the time of the execution of the paper-writing, offered in evidence as the last will and testament of Lloyd Etchison, he, said Lloyd Etchison, said or did nothing from which the jury can find that he knew and understood what

he was doing, (although the jury can lawfully infer that he knew the contents of said paper-writing by making his mark to the said paper, if the jury shall find he did so make his mark to the same,) and said or did nothing to show that he wished the three subscribing witnesses to attest the execution of said paper-writing, but remained passive, then the verdict of the jury must be for the caveator on the first and eighth issues.

16. That if the jury believe that Lloyd Etchison, at any time prior to the execution of the paper-writing of 23rd April, 1876, and purporting to be his last will and testament, was of such unsound mind, memory and understanding, as to render him incapable of making a valid deed or contract, and that such unsoundness of mind was not transitory in its charactor, but was of a permanent and continuing nature, that then the burden of proving the said Lloyd Etchison of sound mind at the time of executing said paper, is on the caveatee.

And the caveatee offered eight prayers, of which it is necessary to set out only the following:

1. That in order to set aside the will of Lloyd Etchison, deceased, offered in evidence by the caveatee, the burden is on the caveator to establish either the incapacity of said testator at the time of the execution of said will, or the exercise of undue inflnence over him, in regard to said will or some of its provisions, and every person of twenty-one years of age is presumed to be of sound mind, and competent to make a will, and this presumption extends throughout his life, no matter what age he may live, the law looks only to the competency of the understanding, and neither age nor sickness, nor extreme distress, nor debility of body, will affect the capacity to make a will, if sufficient intelligence remain.

2. That if the jury find that Lloyd Etchison executed the will offered in evidence by the caveatee, in the presence of three credible witnesses, who, at his request, and

in his presence, subscribed their names as witnesses thereto, and that at the time of the execution thereof he was capable of understanding the business he was engaged in, the property he desired to dispose of, and the object of his bounty named in said will, and that the same was his free and voluntary act, they must find for the caveatee.

4. That it is not necessary to the validity of the will that the testator should have actually seen the witnesses affix their names to the paper, nor that he should have expressed a request for them so to do. It is sufficient in this respect, if the jury find that at the time he signed said paper or affixed his mark thereto, he knew it was his will, that the witnesses signed in his presence, when he might have seen them if he pleased, and that they so signed in compliance with his request.

5. If the jury believe from the evidence, that the testator signed the will in the presence of the three subscribing witnesses, and at the time of so doing was conscious that he was executing his will, it is not necessary or essential to the validity thereof, that he should have used any words declaratory of the nature of the instrument, or made any formal recognition of it or allusion to it.

8. That in passing upon the mental capacity of the testator, the jury should bear in mind that the mere opinions of the witnesses are entitled to weight only to the extent that they are supported by good reasons founded on facts which warrant them in the opinion of the jury. If the reasons are frivolous or inconclusive, the opinions of such witnesses are of no value.

The Court (Bouic and Lynch, J.,) rejected the fifth, sixth, seventh, tenth, eleventh, twelfth, thirteenth and fifteenth prayers of the caveator, and granted his first, second, third, fourth, eighth, ninth, fourteenth and sixteenth prayers, and granted the first, fourth, fifth and seventh prayers of the caveatee, and rejected her third and sixth prayers, her second and eighth prayers being conceded.

The caveator excepted, and the verdict being for the caveatee, the caveator appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ROBINSON and IRVING, J.

*J. E. R. Wood*, for the appellant.

*Thomas Anderson* and *James B. Henderson*, for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

This is an appeal from the rulings of the Circuit Court for Montgomery County, on the trial of issues sent from the Orphans' Court arising upon a *caveat* to the will of Lloyd Etchison, deceased. The appellant, on behalf of himself and other heirs of the testator, was caveator, and the appellee was caveatee. The verdict was rendered in favor of the latter on 30th day of March 1878. Exceptions were reserved by the appellant to the rulings of the Court upon the prayers, an appeal prayed on the 18th December 1878, and the bill of exceptions signed on the 26th day of March 1879, on which day it bears date.

A motion has been made to dismiss the appeal, for the reason that the bill of exceptions was filed and signed too late, being long after the lapse of the term, and there being, as alleged, no order of Court extending the time and no consent of counsel to such extension.

The rules regulating this subject have been stated in *The Baltimore Building Association vs. Grant*, 41 *Md.*, 560, and *Wheeler vs. Briscoe*, 44 *Md.*, 308; and need not be here repeated. In this case the affidavits of counsel have been filed showing the circumstances which caused the delay in signing the bill of exceptions, and the action of the Circuit Court in the matter. The recollection of the counsel does not in all respects agree, and their state-

ments are somewhat in conflict.   Without entering here
into a particular examination of the testimony, we have
concluded under the facts and circumstances as disclosed
by the affidavits, to overrule the motion.

The issues sent for trial were eleven in number; but
three only, the *first, eighth* and *ninth* were involved in the
Court's instructions; these present the question of the
*factum* of the will, that is to say, whether it was duly exe-
cuted and attested according to law, and the question of
the testamentary capacity of the testator.

Upon the question of testamentary capacity the jury
were fully and correctly instructed, by granting the first,
*second,* third, fourteenth and *sixteenth* prayers of the cavea-
tor, and the *first* and *eighth* prayers of the *caveatee,* this
last being *conceded.*

The only prayer of the caveator relating to this ques-
tion, which was rejected, was the *thirteenth;* but as the
proposition contained in this prayer was fully covered by
the instructions granted, it was not error to reject it.
There being no necessity or propriety in repeating the
same instruction to the jury.

Upon the question of the execution and attestation of
the will.   It appears that it was signed by the testator,
by making his mark, and was attested in due form, by
three subscribing witnesses, J. M. Smith, L. W. Snyder
and B. B. Crawford.

The testimony is, that the will was written by Dr.
Crawford, one of the subscribing witnesses, "at the re-
quest of the testator, and at his dictation;" that the testa-
tor sent for the other two subscribing witnesses to attest
his will; that on the morning the will was executed, Dr.
Crawford read the will over to the testator, who said "it
was exactly as he wanted."   Dr. Crawford then left the
will with the testator, went into an adjoining room and
called in the other two subscribing witnesses; that the tes-
tator was raised up in bed for the purpose of signing the

will, two of the subscribing witnesses, *Crawford* and *Smith* stood in front of him, and actually saw him make his mark; that Snyder, the other subscribing witness, was behind him, assisting in holding him up, and in a position where he could have seen him sign it, but did not see him sign it; that the will was attested by all three of the subscribing witnesses in the presence of the testator.

Dr. Crawford, in the presence of the testator, asked the other witnesses to sign the will, the testator did not speak while they were in the room.

The witnesses united in testifying that the testator was at the time of sound mind and memory, and capable of executing a valid deed or contract. "It was not necessary that he should ask the witnesses to sign and attest the will, his assent either express or implied was sufficient; provided the act be done with his knowledge, and not in a clandestine or fraudulent way." *Higgins vs. Carlton, &c.,* 28 *Md.,* 141.

Again, it was not necessary, as stated in the seventh and tenth prayers of the caveator, that all three of the witnesses should actually have seen the testator sign the will, it is sufficient if they were present when it was signed, or if the paper after being signed is acknowledged or declared by the testator in their presence to be his will, and be signed and attested by them in his presence. *Code, Art.* 93, *sec.* 301. In this case there was no verbal declaration by the testator in the presence of the witnesses that the instrument was his will, but that declaration is made in the paper itself, and the testimony shows that it was signed by the testator when the three witnesses were present, and was attested by them in his presence. This was a sufficient execution of the will. 2 *Greenleaf's Evidence, secs.* 675, 676; 4 *Kent's Com.,* 516 *m;* 1 *Redfield on Wills,* 284; 1 *Jarman,* (*Edit.* 1861,) 102.

On this branch of the case, the jury were properly instructed by granting the second, fourth and fifth prayers

of the caveatee, and the fourth, eighth and ninth prayers of the caveator, and there was no error in rejecting the fifth, sixth, seventh, tenth, eleventh, twelfth and fifteenth prayers of the caveator.

Finding no error in the rulings of the Circuit Court, they will be affirmed and the cause remanded.

*Rulings affirmed, and*
*cause remanded.*

(Decided 30th March, 1880.)